IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MT. HAWLEY INSURANCE
COMPANY,

       Plaintiff,

         v.

EAST PERIMETER POINTE
APARTMENTS LP,

       Defendant.

CIVIL ACTION FILE
NO. 1:20-CV-3529-TWT

## OPINION AND ORDER

This is a declaratory judgment action. It is before the Court on the
Defendant's Motion to Dismiss the Amended Complaint [Doc. 25]. For the
reasons set forth below, the Defendant's Motion to Dismiss the Amended
Complaint [Doc. 25] is GRANTED in part and DENIED in part.

## I.  Background

On December 26, 2015, assailants assaulted Adrian Johnson and
murdered Marcus Wilder at the East Perimeter Pointe Apartments in Decatur,
Georgia. (Am. Compl. ¶¶ 37–38.) As a result of these violent crimes, Mr.
Johnson and Mr. Wilder's family filed suits against the Defendant, East
Perimeter Pointe Apartments LP ("East Perimeter") and nonparty Ventron
Management, LLC ("Ventron"). (*Id.* ¶¶ 31, 33.) At the time of the attacks, East
Perimeter owned the East Perimeter Pointe Apartments, and Ventron served
as East Perimeter's property manager and agent. (*Id.* ¶¶ 39–41.) These suits

allege that the Defendant and Ventron negligently managed and secured the premises and were liable for the attacks. (*Id.* ¶ 36.)

Although there is some dispute as to whether the Defendant is a named insured, the Plaintiff, Mt. Hawley Insurance Company ("Mt. Hawley"), issued the relevant insurance policy in this case—Commercial General Liability Policy No. SLO0001472 ("the Policy"). (*Id.* ¶ 42.) The Policy states in part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . . No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments–Coverage A and B.

(*Id.* ¶ 45.) The Policy requires that "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without [the Plaintiff's] consent. (*Id.* ¶ 47.) Further, the Policy includes a "Self-Insured Retention Endorsement." (Am. Compl., Ex. C, at 70–71.) Under this Endorsement, Mt. Hawley's obligation to pay "claim expenses"—defined as "all reasonable and necessary expenses incurred in the . . . defense of any 'claim' or 'suit'"—only applies to expenses in excess of the retention amount of $25,000. (*Id.*) The Endorsement goes on to note that:

> We may at our sole election upon receipt or notice of any "occurrence" or "claim", or at any time thereafter, require you to

2

> pay over and deposit with us all or part of the Retention Amount, to be held and applied per the terms of this Policy.

(*Id.*, Ex. C, at 71.)

After it was notified of the Wilder and Johnson suits, the Plaintiff agreed to defend the Defendant and Ventron under a reservation of rights. (*Id.* ¶¶ 49, 51.) The Plaintiff hired the Hawkins Parnell firm to defend the Defendant and Ventron. (*Id.* ¶ 55.) This reservation of rights allegedly allowed the Plaintiff to file a declaratory judgment action to determine coverage and to seek reimbursement from the Defendant for defense costs in the event no coverage was found. (*Id.* ¶ 56.) The Defendant accepted the Plaintiff's defense under this reservation of rights. (*Id.* ¶ 57.)

Shortly after agreeing to defend the Defendant and Ventron in the Johnson and Wilder suits, the Plaintiff filed its first declaratory action in this Court, "seeking a declaration that it owed no insurance coverage obligations to East Perimeter and Ventron in connection with the claims asserted against them in the Wilder Lawsuit and Johnson Lawsuit." (*Id.* ¶ 58.) In that case, this Court granted the Plaintiff summary judgment, concluding "that East Perimeter was obligated . . . to provide notice of these events, and that it unreasonably failed to do so." *Mt. Hawley Ins. Co. v. E. Perimeter Pointe Apartments, LP*, 409 F. Supp. 3d 1319, 1332 (N.D. Ga. 2019). The Eleventh Circuit affirmed this Court's ruling after the Plaintiff filed this suit, finding that the Plaintiff did not "have a duty to provide a defense of coverage to East

3

Perimeter or Ventron for these incidents." *Mt. Hawley Ins. Co. v. E. Perimeter Pointe Apartments*, 861 Fed. Appx. 270 (11th Cir. 2021).

The Plaintiff's first declaratory action was filed on January 25, 2018. The Defendant filed its initial Answer, Affirmative Defenses, and Counterclaims on April 9, 2018, and an amended version on April 30, 2018. (Compl. ¶¶ 58, 60–61.) On April 13, 2018, the Defendant's coverage counsel wrote the Plaintiff to inform it of an unspecified conflict that prevented Hawkins Parnell from representing the Defendant and Ventron. (*Id.* ¶ 69.) The Defendant and Ventron requested new counsel at the Plaintiff's expense. (*Id.*) On June 14, 2018, the Defendant and Ventron's coverage counsel again wrote the Plaintiff, notifying the Plaintiff and its coverage counsel that the Defendant and Ventron had to hire independent counsel and that the Plaintiff was required to cover those costs. (*Id.* ¶ 72.) In response, the Plaintiff's coverage counsel disputed the existence of a conflict, noted it was defending East Perimeter and Ventron under a reservation of rights, and claimed it was not responsible for any fees to law firms other than Hawkins Parnell. (*Id.* ¶ 73.) Throughout the pendency of the first declaratory action and its appeal, the Plaintiff continued to provide defense counsel to the Defendant and Ventron. (*Id.* ¶ 74.) In February 2020, the Defendant informed the Plaintiff that it had selected Alston & Bird to defend it in the Wilder and Johnson lawsuits, which the Plaintiff acknowledged while noting it would not pay for additional counsel. (*Id.* ¶¶ 75–76.) In March 2020, the Defendant and Ventron informed the

4

Plaintiff of the specific conflict that they argued precluded Hawkins Parnell's participation in their defense. (*Id.* ¶ 77.) As a result, Hawkins Parnell recommended that the defense of the Defendant and Ventron be split and that it resign from its role as their defense counsel absent their consent to defend one of them. (*Id.* ¶ 78.) Neither the Defendant nor Ventron consented, and the Plaintiff appointed new counsel for both Ventron and the Defendant. (*Id.* ¶ 79.) However, the Defendant refused to work with its new counsel appointed by the Plaintiff, instead continuing to work with Alston & Bird. (*Id.* ¶¶ 81–82.)

Ultimately, the Defendant and Ventron settled the Johnson and Wilder lawsuits. (*Id.* ¶ 83.) In letters sent on July 17 and August 7, 2020, the Defendant's coverage counsel sent the Plaintiff invoices totaling $245,000.50 that it had paid for Alston & Bird's services and requested reimbursement under O.C.G.A. § 33-4-6. (*Id.* ¶¶ 84–85.) The Plaintiff disputed this obligation in an August 12, 2020 letter and sought declaratory relief that it had no obligation to reimburse the Defendant for any of the legal expenses incurred without its consent. (*Id.* ¶ 84.) A month later, the Defendant filed a lawsuit in Illinois state court seeking reimbursement for its independent counsel fees and bad-faith penalties under Georgia law. (*Id.* ¶¶ 91–92.) Though the Amended Complaint alleges that this case is no longer pending, the Court takes judicial notice of filings indicating the case has been reopened. (*Compare id.* ¶ 101, *with* Def.'s Reply Br. in Supp. of Def.'s Mot. to Dismiss, Ex. A, at 2.) Meanwhile, in the case here, the Defendant moved to dismiss the Plaintiff's declaratory

5

judgment claim, which the Court did without prejudice. (*See* Aug. 25, 2021 Order, at 13.) The Plaintiff filed an Amended Complaint with a declaratory judgment claim and an additional claim for reimbursement, which the Defendant again seeks to dismiss.

## II.   Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994–95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S.

6

89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III.   Discussion

This case returns to the Court upon the Defendant's motions to dismiss the Plaintiff's two claims for relief. The Court begins with the Plaintiff's amended claim for declaratory relief before turning to the Plaintiff's reimbursement claim.

### A. Declaratory Judgment Claim

The Eleventh Circuit unequivocally ruled that Mt. Hawley did not "have a duty to provide a defense or coverage to East Perimeter . . . for these incidents." *Mt. Hawley Ins. Co.*, 861 F. App'x at 278–79. However, pointing to the Defendant's Illinois suit seeking repayment for the fees it paid to Alston & Bird, the Plaintiff claims it remains "in a position of uncertainty or insecurity with respect to its rights, status, and other legal relations as to its obligations (if any) to reimburse" the Defendant for these expenses. (Am. Compl. ¶ 103.) The Court previously declined to exercise is discretion over the Plaintiff's declaratory claim under *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005). (*See* Aug. 25, 2021 Order, at 13.) In its Amended Complaint, the Plaintiff emphasizes that its uncertainty as to its legal relationship to the Defendant results from the Defendant's "position that res judicata based on the [previous action for declaratory judgment] does not preclude its claims against Mt. Hawley to recover legal fees and expenses it paid to Alston & Bird or" bad faith penalties under Georgia law. (Am. Compl.

7

¶ 103.) The Defendant asks this Court to again dismiss the Plaintiff's amended declamatory claim, arguing that res judicata and collateral estoppel arising from this Court's dismissal of the Plaintiff's original Complaint bar consideration of the Plaintiff's claim. (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 8–12.) Further, the Defendant argues that this Court lacks subject matter jurisdiction over this matter and that the Plaintiff has insufficiently pleaded its declaratory relief claim. (*Id.* at 12–19.) In response, the Plaintiff argues that because it has brought a non-declaratory claim in its Amended Complaint, a stricter standard applies to the Court's decision as to whether to exercise jurisdiction. (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss, at 12–17.) The Plaintiff argues that it has stated a claim for declaratory relief, and the Court should liberally entertain such claims. (*Id.* at 20–25.)

The Defendant's legal arguments against the Plaintiff's declaratory claim fail. As the Plaintiff highlights, the Court's previous Order here was neither a final judgment in an earlier action nor a judgment on the merits, and thus the Court's previous Order cannot serve as the basis for collateral estoppel or res judicata here. *See, e.g.*, *State v. Mizell*, 288 Ga. 474, 478 (2011) ("Collateral estoppel and res judicata . . . both require a previous action between the same parties, and the trial court's orders came in the same action . . . .") Further, the Plaintiff has sufficiently pleaded a declaratory judgment claim, as the Illinois action represents an actual controversy between the Parties that satisfies Article III's requirements. *American Ins. Co. v. Evercare*

*Co.*, 430 F. App'x 795, 798 (11th Cir. 2011). Thus, the remaining issue is whether the Court should again refrain from exercising its jurisdiction over this declaratory claim.[1]

The Parties disagree over the standard the Court should apply when making this decision. The Plaintiff argues that "the stricter requirements" found in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), should apply because it brings both declaratory and non-declaratory claims and a parallel state claim is pending. (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss, at 12.) In support, the Plaintiff cites one case from a district court within this Circuit. (*Id.*) However, that decision goes against the logic of the Eleventh Circuit's recent opinion in *National Trust Ins. Co. v. S. Heating & Cooling Inc.*, 12 F.4th 1278, 1283–85 (11th Cir. 2021), which described the broad discretion district courts have in entertaining declaratory judgments even in the absence of parallel state proceedings. The Court thus finds that the standard described in *Ameritas* and the Court's earlier Order—the *Wilton* & *Brillhart* standard—applies here. *See Ameritas Variable Life Ins. Co.*, 411 F.3d at 1331.

The Court again exercises its statutory discretion to refrain from

---

[1] The Parties frequently refer to this analysis as one of "abstention" or "jurisdiction." These descriptions are incorrect. As the Eleventh Circuit recently made clear, this analysis instead relies upon the discretion granted to the Court by the Declaratory Judgment Act itself. *National Trust Ins. Co. v. S. Heating & Cooling Inc.*, 12 F.4th 1278, 1282 n.2 (11th Cir. 2021)

9

deciding the Plaintiff's declaratory claim. As it did in its Original Complaint, the Plaintiff "contends that this Court's decision in the First [Declaratory] Action would preclude any claims by East Perimeter to recover legal fees and expenses and bad-faith penalties from Mt. Hawley . . . ." (Am. Compl. ¶ 104.) In doing so, the Plaintiff concedes that it seeks a declaration as to the preclusive effect of this Court's ruling in the First Declaratory Action. (*Id.* ¶¶ 108–09, 113.) This concession, viewed in light of the *Ameritas* factors, makes clear that this Court should refrain from granting the declaratory relief requested. The second *Ameritas* factor—"whether the judgment in the federal declaratory action would settle the controversy"—supports that exercise of discretion. *Ameritas Variable Life Ins. Co.*, 411 F.3d at 1331. Indeed, if the Plaintiff believes the Court's Order in the First Declaratory Action precludes the Illinois action or any hypothetical suit brought by the Defendant, the proper venue for such an argument is in those proceedings. Similarly, any further declaration by this Court on this issue would not "serve a useful purpose in clarifying the legal relations at issue," a consideration required by the third *Ameritas* factor. *Id.* The Plaintiff concedes that these issues were detailed in the First Declaratory Action, and a repetitive declaration would not provide further clarity here. Finally, the fourth *Ameritas* factor—"whether the declaratory remedy is being used merely . . . to provide an arena for a race for *res judicata*"—also leads this Court to conclude an exercise of its discretion is required here. *Id.* The Plaintiff expresses concerns about the prospect of suits

10

by the Defendants in other forums and asks this Court to declare that these suits brought regarding the Alston & Bird fees are precluded. (Am. Compl. ¶¶ 103–04, 108.) This explicit request to recognize and declare the preclusive effect of the Court's earlier ruling is exactly the "procedural fencing" that *Ameritas* counsels district courts to consider in these analyses. *Id.* Thus, the Court finds again that under these particular factual and procedural circumstances, the *Ameritas* factors suggest this Court should refrain from granting the declaratory relief requested, and Count I is dismissed.

### B. Reimbursement of Defense Costs

In its reservation of rights, the Plaintiff informed the Defendant that it reserved the right "to seek reimbursement from Ventron and East Perimeter for any amounts Mt. Hawley incurs for defense/indemnity in the event it is determined that no duty to defend or coverage exists for the lawsuit." (Am. Compl., Ex. E, at 7.) Since the Plaintiff filed its original Complaint in this action, the Eleventh Circuit affirmed this Court's finding that it had no duty "to provide a defense or coverage to East Perimeter . . . for these incidents." *Mt. Hawley Ins. Co.*, 861 F. App'x at 278–79. Armed with this decision, the Plaintiff now seeks reimbursement under its reservation of rights for its expenditures defending the Defendant in the Wilder and Johnson lawsuits.

Courts largely agree that where an insurer includes a right of reimbursement in its policy, such agreements are enforceable. *See, e.g.*, *American Family Ins. Co. v. Almassud*, 522 F. Supp. 3d 1263, 1269 (N.D. Ga.

11

2016). But whether an insurer can reserve a right to recoupment when that right is not included in the underlying policy is an unsettled issue in Georgia. Georgia courts have not decided the issue, and federal courts are split. *See Georgia Interlocal Risk Mgmt. Agency v. City of Sandy Springs*, 337 Ga. App. 340, 346–47 (2016) (recognizing the national split and declining to rule on the issue). Decisions from this Court have adopted the two prevailing views. In *Illinois Union Ins. Co. v. NRI Constr. Inc.*, 846 F. Supp. 2d 1366, 1377 (N.D. Ga. 2012) the Court found that "[a] right of reimbursement is justified under either an unjust enrichment or implied in fact contract theory." In contrast, the Court adopted a different view in *Almassud*, ruling that allowing recoupment of defense costs would allow the insurer to unilaterally alter the policy's terms.

Though *Almassud* is directly on point here, it did not appear in any of the Parties' briefing. In a Notice to the Court filed after the completion of the briefing, the Defendant points the Court to *Almassud* to support its arguments seeking the dismissal of the Amended Complaint. (Def.'s Notice, at 1–2.) The Plaintiff responded to this notice by continuing to argue for the majority view but noting that even if the minority view were to prevail, the Policy includes a $25,000 retention amount that has not yet been paid. (Pl.'s Response to Def.'s Notice, at 2–4.)

Ultimately, this Court finds the minority view more persuasive. As noted in *Almassud*, "if a right to recoupment is a benefit that the insurer deems

sufficiently important, it can easily secure that right by including it in the policy agreement." *Almassud,* 522 F. Supp. 3d at 1269. To reserve a right to recoupment that is not part of the underlying policy would allow insurers to unilaterally impose a post hoc condition upon their contractual obligation to their insureds. If the insurer wants to reduce the risk of paying for defenses for claims that ultimately fall outside of a policy's coverage, the insurer must include such a reservation of rights in the policy from the outset. *See id.* ("[R]equiring the insurer bear the burden of including that provision makes sense because the insurer is in the better position to dictate the terms of the policy.").

With the minority view in effect here, the Plaintiff points to the Policy's "Self-Insured Retention Endorsement" as a provision that allows for a recoupment of costs. (Am. Compl., Ex. C., at 70–71.) In this provision, the Plaintiff states that its "obligation to pay any combination of 'claim expenses' and 'damages' on behalf of any insured applies only to the amount of 'claim expenses' and 'damages' in excess of the Retention Amount . . . ." (*Id.,* Ex. C, at 70.) The provision goes on to note that if the Plaintiff takes over the defense of a claim, the insured "will continue to be responsible for the payment of the Retention Amount, including the payment of our selected defense counsel." (*Id.*) Finally, the provision states that the Plaintiff can, "upon receipt or notice of any 'occurrence' or 'claim', or at any time thereafter, require you to pay over and deposit with us all or part of the Retention Amount, to be held and applied

13

per the terms of this Policy." (*Id.*, Ex. C, at 71.) With this Self-Insured Retention Endorsement, the Plaintiff has identified a policy provision that reserves a right of recoupment. Under the *Almassud* rule, the Plaintiff has stated a claim for recoupment under Georgia law, but its recoupment claim may not exceed the Retention Amount included in the Policy. As a result, the Defendant's motion is denied as to Count II.

## IV.   Conclusion

For the reasons set forth above, the Defendant's Motion to Dismiss the Amended Complaint [Doc. 25] is GRANTED in part and DENIED in part. Count I is dismissed. Count II may proceed consistent with this Order.

SO ORDERED, this ___1st___ day of April, 2022.

THOMAS W. THRASH, JR.
United States District Judge

14